No. 302. REDERI A/B DISA *v.* CUNARD STEAMSHIP Co., LTD. C. A. 2d Cir. Certiorari denied. *William P. Kain, Jr.,* and *Thomas F. Molanphy* for petitioner. *Herbert Brownell* for respondent.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

This contractual controversy is bound in the end to be resolved either by arbitration or by a judicial trial, but the court below has required the parties to go through the inconvenience and expense of arbitration before they can obtain a binding decision that the arbitration forum is in fact the proper one. Since this gross waste of time and effort is neither required by the applicable statutes nor consistent with fair and efficient judicial procedure, I would grant certiorari and reverse.

The dispute over which tribunal should determine the merits of this case arises in this way. Cunard, the respondent, chartered a ship owned by petitioner and also acted as stevedore in unloading the ship when it reached New York. A longshoreman employee of Cunard was injured during Cunard's stevedoring operation and sued petitioner, the ship's owner. Petitioner owner then claimed that Cunard was liable to indemnify it for any damages it might have to pay Cunard's employee. If the claim of indemnity is considered to be a dispute arising under the charter contract, that contract governs and the controversy must be arbitrated in London. If, however, the controversy arises, not under the charter, but under the stevedore's warranty of workmanlike service implied by law, *Ryan Stevedoring Co.* v. *Pan-Atlantic Steamship Corp.,* 350 U. S. 124 (1956), then the case must be tried by the District Court in New York. The District Judge decided that the dispute arose under the charter and stayed the judicial proceedings pending

arbitration. The Court of Appeals, while expressing considerable doubt as to whether arbitration was in fact proper, nevertheless followed what it considered to be the requirements of *Schoenamsgruber* v. *Hamburg Line,* 294 U. S. 454 (1935), and ruled that the District Judge's order was not yet appealable. I think decent and expeditious judicial procedure requires that the principles governing appealability announced in *Schoenamsgruber* be repudiated and that the Court of Appeals be held obligated to determine the proper tribunal now, either on the ground that the order is a "final" judgment and appealable as such, 28 U. S. C. § 1291, or on the ground that it is an interlocutory decision amounting in all substance and effect to an "injunction" and therefore appealable under 28 U. S. C. § 1292 (a)(1).

Section 1292 (a)(1) permits appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." An order should be appealable within the meaning of this statute if in substantial effect it is equivalent to an injunction, and as a matter of fact we have so held. *Ettelson* v. *Metropolitan Insurance Co.,* 317 U. S. 188 (1942). It is true that some doubt has been cast on the *Ettelson* test by *City of Morgantown* v. *Royal Insurance Co.,* 337 U. S. 254 (1949), and *Baltimore Contractors* v. *Bodinger,* 348 U. S. 176 (1955). But these more recent cases have introduced confusion and technicality into the law, requiring resolution of this statutory question in terms of the fiction of separate law, equity, and admiralty "sides" of the United States District Court. I think the time has come to abandon this outmoded fiction about "sides" of the court and return to the sound principles announced in *Ettelson, supra.* Here as in *Ettelson* petitioner is "in no different position than if a state equity court had restrained [it] from proceeding in [a] law action." *Ettelson, supra,* at 192. Since the stay entered

in this case was an injunction in every practical sense, I would hold that it was an injunction in the statutory sense and allow the present appeal.

I also think this order was "final" within the meaning of 28 U. S. C. § 1291. Our cases dealing with the meaning of finality have provided no satisfactory definition of this term, as this Court has itself repeatedly recognized. *McGourkey* v. *Toledo & Ohio R. Co.*, 146 U. S. 536 (1892); *Dickinson* v. *Petroleum Conversion Corp.*, 338 U. S. 507 (1950). Certainly we have time and again departed from the statement in *Catlin* v. *United States*, 324 U. S. 229, 233 (1945), that the decision to be final and appealable must be one which "leaves nothing for the court to do but execute the judgment," and we have held numerous orders final and appealable which had left open major questions in litigation but were nevertheless "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, 546 (1949). See also *Roberts* v. *U. S. District Court*, 339 U. S. 844 (1950); *Brown Shoe Co.* v. *United States*, 370 U. S. 294 (1962). The same practical test of finality has been applied to determine whether the judgment of a state court is "final" within the meaning of 28 U. S. C. § 1257. *Construction Laborers* v. *Curry*, 371 U. S. 542 (1963); *Mercantile National Bank* v. *Langdeau*, 371 U. S. 555 (1963).

Accordingly, I do not regard as conclusive the fact that in cases of this kind "[t]he parties are still before the court and further proceedings may be moved after the arbitrators have acted." Compare *Lowry & Co.* v. *S. S. Le Moyne D'Iberville*, 372 F. 2d 123, 124 (C. A. 2d Cir. 1967). The order in the present case stayed the

judicial proceedings petitioner had commenced in New York and required the parties to go to London and conduct an arbitration that may prove costly and time consuming. Under these circumstances the question whether petitioner had a right to prompt determination of its claim in a judicial forum is "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra.* The court below was correct, of course, in noting that if the arbitration award proves satisfactory to petitioner, the question of arbitrability will then be moot, but in that event petitioner's right—if it has one—to avoid the costs and inconveniences incident to a foreign arbitration will have been irretrievably lost. It was this very danger that was the controlling consideration in *Cohen, supra,* 337 U. S., at 546.

It is also true that postponing review will prove to have been the more efficient approach if the District Judge's ruling is ultimately affirmed. But the probability of such an outcome can never be assessed from the present vantage point. There is at least a strong possibility that when review is finally had, the ruling will be found erroneous by the United States courts. In that case it will be necessary to proceed at long last to trial. At the moment all we can say is that we must risk either an unnecessary appeal or an unnecessary arbitration. The former may be somewhat bothersome for the appellate courts, but the latter will be such a serious burden for both the parties that I would unhesitatingly choose to avoid it. I would grant the writ, reverse the judgment below, and require a ruling now on the only controversy between the parties that is ripe for decision at this time—should the case be arbitrated or tried in court?