Arturo PENALVER, Plaintiff,

v.

COMPAGNIE DE NAVIGATION FRUTI-ERE, MATOUBA, Defendant and Third-Party Plaintiff,

Lauritzen Peninsular Reefers, Ltd., Third-Party Defendant.

No. 75 C 622.

United States District Court, E. D. New York.

March 28, 1977.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff.

Healey, Stonebridge & McCaffrey, New York City (Thomas H. Healey, New York City, of counsel), for defendant and third-party plaintiff.

William R. P. Hogan, Freehil, Hogan & Mahar, New York City, for third-party defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is a motion by the third party defendant, Lauritzen Peninsular Reefers, Ltd. (hereinafter "charterers"), for an order pursuant to Title 9 U.S.C. § 3 staying the third party action filed against it pending arbitration.

The main action was commenced on April 25, 1975, alleging that the plaintiff, Arturo Penalver, while in the employ of Pittston Stevedoring, a company hired by the charterers to unload the vessel "Matouba", was injured because of the negligence of the defendant. The defendant, Compagnie De Navigation Frutiere (hereinafter "owners"), denied the charges, raised various affirmative defenses, and filed a third party complaint against the charterers alleging that if the plaintiff's injuries resulted from negligence aboard its vessel, the negligence was caused by the primary and active fault of the charterers, its agents, servants, or employees and/or from the charterers' breach of its duties and obligations under the charter party. The charterers have not filed an answer to the third party complaint, believing that to do so might be construed as a waiver of its rights under the arbitration clause of the charter agreement which provides that:

> "Any dispute arising under the Charter to be referred to arbitration in London (or such other place as may be agreed) one Arbitrator to be nominated by the Owners and the other by the Charterers, and in case the Arbitrators shall not agree then to the decision of an Umpire to be appointed by them, the award of the Arbitrators or the Umpire to be final and binding upon both parties."

The charterers thus argue that this dispute is subject to arbitration and that the third party action should be stayed pending such arbitration. The owners contend that a stay should not be granted because the dispute arises *outside* of the charter agreement and is not subject to arbitration.

Title 9 U.S.C. § 3 provides that:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the

issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The issue before this Court is whether the parties intended the arbitration clause of the agreement to cover the claim sued upon. *Benedict on Admiralty*, Rev. 7th Ed. (1975), Vol. 2, Ch. VIII, § 104.

 We note initially that the party seeking a stay has the burden of proof. *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Company, Inc.*, 339 F.2d 440, 442 (2d Cir. 1964). However, there is a strong federal policy in favor of arbitration; *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968), and "it has long been the rule to resolve any doubt as to the submission agreement in favor of coverage." *Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 390 (2d Cir. 1972).[1]

 Two clauses in this agreement support the conclusion that the third party dispute should be subject to arbitration. Clause four provides in part that:

"The Charterers . . . also to arrange and pay for loading, trimming, stowing . . . unloading, weighing, tallying and delivery of cargoes . . ."

This clause shifts the responsibility of proper discharge of the cargo to the charterer, and, as the Second Circuit has observed:

". . . that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it."

*Fernandez v. Chios Shipping Co., Ltd.*, 542 F.2d 145, 152 (2d Cir. 1976).

Moreover, clause thirteen states that:

"The owners not to be responsible in any other case nor for damage or delay whatsoever and howsoever caused even if caused by the neglect or default of their servants . . . The Charterers to be responsible for loss or damage caused to the Vessel or to the Owners by goods being loaded contrary to the terms of the charter or by improper or careless bunkering or loading, stowing, or discharging of goods or any other improper or negligent act on their part or that of their servants."

Read together, these two provisions cover the dispute.

Furthermore, although the owners claim that the dispute arises outside the charter agreement, their third party complaint states that even if negligence aboard the vessel was the cause of the plaintiff's injuries, it "was caused and created solely by the primary and active fault of third-party defendant, its agents, servants and employees, *and/or from third-party defendant's breach of its duties and obligations under the charter party*" (emphasis added). Thus, the owners are in the contradictory position of, on the one hand, having impleaded the charterers under a theory of third party liability arising *under* the agreement, and, on the other hand, resisting a stay pending arbitration on the ground that the dispute does *not* arise under the charter agreement. This is true at least insofar as the owners third party action is based on the charterers breach of its obligations under the charter agreement.

Our finding that the dispute is subject to arbitration is supported by two similar cases. In *Giuffre v. Magdalene Vinnen*, 152 F.Supp. 123 (E.D.N.Y.1957), an injured longshoreman sued the vessel naming the

---

1. *See also, International Ass'n of Machinists & Aerospace Workers, AFL–CIO, v. General Electric Co.*, 406 F.2d 1046 (2d Cir. 1969), wherein the Court held (at p. 1048) that:

"[D]oubts as to arbitrability should be 'resolved in favor of coverage,' . . . language excluding certain disputes from arbitration must be 'clear and unambiguous' . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' "

owner as respondent. The owner then impleaded the charterer. As in the case at bar, the charterer in *Giuffre* agreed to furnish stevedoring services. The owner disclaimed liability relying on the charterer's obligation to supply those services. The charterer moved for a stay pending arbitration under an arbitration clause similar to the one in the case at bar, which provided that:

"Any dispute arising from the present agreement should be brought before a Court of Arbitration . . ."

The Court held (at p. 125) that the dispute was subject to arbitration declaring that:

"The relationship of the parties is that of shipowner and charterer, and the allegations which have been quoted from the impleading petition, are clearly to the effect that the charterer has violated or failed to perform certain of its engagements which exist only by reason of the charter party; in other words, the owner alleged default in performance, not to be distinguished in principle, for instance, from non-payment of the charter hire or other breach of the contract."

Similarly, in *Penoro v. Rederi A/B Disa*, No. 64 Ad. 478 (S.D.N.Y. July 5, 1966), *appeal dismissed*, 376 F.2d 125 (2d Cir.), *cert. denied*, 389 U.S. 852, 88 S.Ct. 78, 19 L.Ed.2d 122 (1967), an injured longshoreman sued the owners of the vessel who impleaded the charterer. The Court held that clauses four and thirteen of the Baltime Charter, the same kind of form agreement at issue in this case, covered the dispute, and thus the issue was subject to arbitration.

The owners rely principally on *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), allowing contribution between joint tort-feasors in non-collision cases, and the 1972 amendments to the Harbor Workers Compensation Act, Title 33 U.S.C. § 905, eliminating a vessel's warranty of seaworthiness and limiting the vessel owners liability to its own negligence in arguing that arbitration is "imprudent". However, neither the *Cooper* case nor the statute prohib-

it the parties from agreeing to arbitrate or from apportioning their liability, as these parties did, in the agreement itself.

Finally, the owners contend that a stay should not be granted because the stevedore cannot be compelled to testify in London. However, the agreement allows for arbitration either in London, "or such other place as may be agreed." Thus, the parties may agree to arbitrate in a location where the stevedore can be compelled to testify. Moreover, even if the parties cannot so agree, it is well settled that the fact that a foreign country is chosen as the arbitration location does not affect the power of a court to stay the action. *Kurt Orban Co., Inc. v. S/S Clymenia*, 318 F.Supp. 1387, 1390 (S.D.N.Y.1970); *Mannesmann Rohrleitungsbau v. S.S. Bernhard Howaldt*, 254 F.Supp. 278 (S.D.N.Y.1965); *The Quarrington Court*, 25 F.Supp. 665 (S.D.N.Y.1938), *reversed on other grounds*, 102 F.2d 916 (2d Cir.), *cert. denied, sub nom., Court Line v. Isthmian*, 307 U.S. 645, 59 S.Ct. 1043, 83 L.Ed. 1525 (1939).

For the foregoing reasons, the motion by the third party defendant, Lauritzen Peninsular Reefers, Ltd., for an order staying the third party action, is granted.

SO ORDERED.