[Cite as *Dodeka v. Keith*, 2012-Ohio-6216.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| DODEKA, L.L.C., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2011-P-0043** |
| CINDY KEITH, | : | |
| Defendant/Third Party Plaintiff-Appellant, | : | |
| | : | |
| RICHARD J. WELT, | : | |
| Third Party-Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2009 CV 0710.

Judgment: Reversed and remanded.

*Patrick J. Krebs* and *Gregory J. O'Brien*, Taft, Stettinius & Hollister, L.L.P., 200 Public Square, Suite 3500, Cleveland, OH 44114 (For Plaintiff-Appellee and Third Party Defendant-Appellee).

*Robert S. Belovich*, 9100 South Hills Blvd., Suite 300, Broadview Heights, OH 44147; and *Anand N. Misra*, The Misra Law Firm, L.L.C., 3659 Green Road, Suite 100, Beachwood, OH 44122 (For Defendant/Third Party Plaintiff-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final judgment of the Portage County Court of Common Pleas. In that judgment, the trial court adopted a decision of a court magistrate and granted the motion of appellees, Attorney Richard J. Welt and Dodeka,

LLC, to stay the underlying action so that the matter could proceed to arbitration. As the primary basis for the appeal, appellant, Cindy Keith, contends that arbitration should not have been ordered because she was not a party to the arbitration clause in the underlying credit card agreement.

{¶2} In September 1991, appellant was married to Andrew Keith. At that time, Andrew submitted an application to U.S. Bank for a credit card. After receiving the card, Andrew continued to use it throughout the next eleven years. During that time frame, appellant's name appeared on the various account statements that were mailed to the Keith residence.

{¶3} In 2000, the Keiths were divorced pursuant to a judicial decree. As part of the distribution of the marital property, Andrew was held solely responsible for any debt under U.S. Bank card. However, no steps were ever taken to remove appellant's name from the account, and the account statements mailed to Andrew at his separate address continued to have her name on them.

{¶4} During the time frame in which the "Keith" credit card account was open, U.S. Bank would periodically modify the terms of the underlying agreement by sending copies of the new contract to the listed address. The last of these "amended" contracts was mailed to Andrew's home address in July 2002. Paragraph 43 of that contract was an arbitration provision, which generally stated that either side had the right to choose to submit "any kind" of dispute to binding arbitration so long as that dispute arose from the underlying "credit card" agreement.

{¶5} In April 2003, Andrew Keith stopped making payments on a considerable sum that he had charged on the U.S. Bank credit card. Five months later, he submitted

2

a petition for federal bankruptcy, and his credit card debt was ultimately discharged. As a result, U.S. Bank removed Andrew's name from the "credit card" account, and began to pursue possible remedies against appellant.

{¶6} In November 2007, U.S. Bank transferred its interest in the "Keith" account to Dodeka, LLC, thereby giving that entity the ability to seek payment on the outstanding balance of $10,964.56. Approximately eight months later, Dodeka instituted an action for money damages against appellant in the Portage County Municipal Court. After the action had been pending for nearly ten months, appellant answered the complaint and asserted a counterclaim, essentially alleging that Dodeka had violated certain consumer protection laws in maintaining the case. As an additional party to the counterclaim, she named Dodeka's original counsel, Attorney Richard J. Welt, as a third-party defendant.

{¶7} Due to the amount of damages appellant sought in her counterclaim, the municipal court transferred the case to the common pleas court. Upon reviewing the pleadings in the action, the common pleas court concluded that Dodeka had failed to attach the required documents to its complaint. Accordingly, Dodeka filed an amended complaint in March 2010. In addition to attaching copies of various account statements from 2002 and 2003, Dodeka also submitted the affidavit of a recovery manager for U.S. Bank.

{¶8} Prior to the submission of the amended complaint, Dodeka and Attorney Welt, appellees, moved the trial court to stay the action so that the entire matter could proceed to arbitration. In support of their position that the arbitration clause in the July 2002 amended contract applied to appellant, appellees attached a separate affidavit of the U.S. Bank recovery manager. As part of her averments, the manager asserted that

3

appellant and Andrew had applied jointly for the disputed credit card in 1991.  However, no copy of the joint application was presented with the motion to stay.  Instead, the only other evidentiary item submitted with the motion was a copy of the July 2002 amended contract that was mailed to Andrew's home address.

{¶9}    Before responding to the motion to stay/compel arbitration, appellant took the deposition of the U.S. Bank recovery manager.  In her subsequent response brief, appellant tried to use the manager's answers to certain questions to challenge whether she had any personal knowledge of the disputed account.  Additionally, appellant also attached to her response brief her own affidavit, in which she stated that: (1) she never applied for a credit card with U.S. Bank; (2) she never made any payments to U.S. Bank on the disputed account; and (3) she did not make any of the purchases set forth on the account statements from 2002 and 2003.

{¶10}  In attempting to reply to appellant's contention that the arbitration clause was inapplicable to her because she was never a party to the initial contract, appellees tried to take the deposition of Andrew Keith.  However, because Andrew had cancer, a dispute arose between the parties as to how much time appellant should be afforded to question him.  Therefore, the deposition never went forward, and appellees did not file a reply brief.

{¶11}  Ultimately, the motion to stay/compel arbitration, along with other pending motions, was referred to a trial court magistrate for consideration.  Despite the fact that an evidentiary hearing was conducted, the magistrate based his decision on the motion to stay solely upon the materials accompanying the pleadings, appellees' motion, and appellant's response.  In holding that the parties' claims could be referred to arbitration,

4

the magistrate basically accepted appellant's averment that she did not sign the "credit card" application submitted by Andrew Keith in 1991. Nevertheless, the magistrate still found that the arbitration clause in the July 2002 amended agreement was applicable because she could have become a party to the account through her intervening use of the credit card. In support of this finding, the magistrate emphasized that her name had appeared on the monthly account statements, and that she never denied in her affidavit that she had made purchases with the credit card prior to 2002. Hence, the magistrate recommended that the motion to stay be granted.

{¶12} Appellant objected to the magistrate's decision, essentially arguing that it was not demonstrated that she had agreed to be bound by the arbitration clause. After appellees filed a response, the trial court issued a final judgment in which the objections were overruled and the decision of the magistrate was adopted. Accordingly, the court granted appellees' motion to stay and ordered the parties to submit the entire action to binding arbitration.

{¶13} In appealing the foregoing decision, appellant has raised two assignments of error for review:

{¶14} "[1.] The trial court committed prejudicial error in granting appellees' motion to require arbitration without making the threshold finding as to the legal requirement that [appellant] must have entered into an agreement to arbitrate.

{¶15} "[2.] The trial court committed prejudicial error in granting appellees' motion to require arbitration without finding whether the alleged claims were within the scope of the alleged agreement, and whether appellees through their litigation activities had waived any claim to arbitration."

5

**{¶16}** Under her first assignment, appellant reasserts the basic argument forming the grounds for her objections before the trial court. That is, appellant contends that the arbitration clause in the July 2002 amended contract cannot be enforced against her because appellees never proved that the elementary requirements for the formation of the original credit card agreement had been satisfied. She emphasizes that there was no evidence before the court magistrate to support a finding that, in 1991, she actually accepted U.S. Bank's offer to create a credit card account.

**{¶17}** As previously discussed, appellees' motion to stay/compel arbitration was predicated upon Paragraph 43 of the amended "credit card" contract which was mailed to Andrew Keith's address in July 2002. This provision stated, in pertinent part:

**{¶18}** "By requesting an Account from us and accepting this Agreement, you agree that if a dispute of any kind arises out of this Agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. * * *.

**{¶19}** "Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision * * * must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the

6

Claim is filed * * *. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16."

{¶20} As a basic proposition, the Federal Arbitration Act states that if the parties to an interstate commerce transaction have agreed in writing to settle any controversy through arbitration, such a term "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. The federal statutory scheme delineates two general methods for the enforcement of a written arbitration clause. First, if a lawsuit involving an issue referable to arbitration is already pending in any federal or state court, an application to stay the proceeding can be filed. 9 U.S.C. 3. Second, if no pertinent lawsuit is presently pending, a petition for an order requiring immediate compliance with the arbitration clause can be brought in any United States district court. 9 U.S.C. 4.

{¶21} The Ohio statutory scheme governing agreements to arbitrate, as set forth in R.C. Chapter 2711, is patterned after the federal scheme, to the extent that our state also recognizes two procedural mechanisms for requiring a party to abide by the written contractual term: "The Ohio Arbitration Act allows for either direct enforcement of such agreements through an order to compel arbitration under R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C. 2711.02." *Brumm v. McDonald & Company Securities, Inc.*, 78 Ohio App.3d 96, 100 (4th Dist.1992). Under Ohio law, the two procedures are viewed as separate and distinct. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, ¶14.

{¶22} Pursuant to the federal statutory scheme, only a motion to stay a pending legal action can be submitted before a state court. Therefore, in moving the trial court

7

for relief in the instant case, appellees were going forward solely under 9 U.S.C. 3. This statute provides, in its entirety:

{¶23} "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement*, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default in proceeding with such arbitration." (Emphasis added.)

{¶24} The standard for determining the merits of an application to stay the trial court proceedings is virtually identical under the corresponding Ohio provision. That is, R.C. 2711.02(B) states that the stay application should only be granted when the court has been "satisfied" that the underlying issue in the pending legal action was intended under the parties' written agreement to be referred to arbitration.

{¶25} As the wording of both 9 U.S.C. 3 and R.C. 2711.02(B) strongly suggests, two basic facts must be proven before a stay of the trial proceedings can be justified: (1) the existence of a valid written agreement to arbitrate disputes between the parties; and (2) the scope of the agreement is sufficiently broad to cover the specific issue which is the subject of the pending case. *Bratt Enterprises, Inc. v. Noble International LTD.*, 338 F.3d 609, 612 (6th Cir.2003). Both factual requirements are predicated upon the legal proposition that, while the arbitration of disputes is strongly encouraged under the law, a party should not be forced to proceed to arbitration unless she expressly agreed to do

8

so. *Id.*; *Telsat, Inc. v. Knight*, 9th Dist. No. 23502, 2007-Ohio-2342, ¶12. Furthermore, in determining whether an enforceable agreement to arbitrate exists, state-law contract principles must be applied. *Stepp v. NCR Corp.*, 494 F.Supp.2d 826, 831 (S.D.Ohio 2004).

{¶26} At the trial level, the party requesting the "arbitration" stay has the burden of proof regarding both the existence of the agreement to arbitrate and its basic scope. *Penalver v. Compagnie De Navigation Frutiere*, 428 F.Supp. 1070, 1072 (E.D. N.Y 1977). As to the nature of appellate review of a stay determination, federal courts have indicated that any rulings concerning the issues of existence and scope are considered de novo. *See, e.g., Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir.2000). In contrast, Ohio courts have generally held that decisions on applications to stay under R.C. 2711.02(B) will only be reversed on appeal when an abuse of discretion has been established. *Telsat, Inc.*, 2007-Ohio-2342, at ¶8; *Brunke v. Ohio State Home Services, Inc.*, 9th Dist. No. 06CA008947, 2007-Ohio-3119, ¶10. But even these Ohio courts have recognized that when the trial court's decision turned upon its analysis of a question of law, a de novo standard of review must be employed. *Id.*

{¶27} As previously noted, in contending at the trial level that appellees were not entitled to an "arbitration" stay, appellant's argument focused upon the initial question of whether she had ever agreed to arbitrate any dispute relating to a "credit card" account with U.S. Bank; i.e., it was her position that the arbitration clause in the amended July 2002 agreement was inapplicable to her because she never executed the original 1991 application for the credit card. In addressing this particular issue in their appellate brief, appellees maintain that they presented three items of evidentiary materials which were

9

sufficient to demonstrate the existence of a contractual relationship between appellant and U.S. Bank. Of these three items, only one was cited by the trial court magistrate in support of his ultimate factual finding regarding the applicability of the arbitration clause. That item consisted of the copies of the 2002-2003 monthly account statements which were attached to Dodeka's amended complaint.

{¶28} In responding to appellees' motion to stay/compel arbitration, appellant did not contest the authenticity of the copies of the monthly account statements. Moreover, she did not challenge the fact that her name appeared on each of the statements, and that each statement was mailed to Andrew Keith's proper address during that two-year period. Therefore, since there were no factual disputes regarding the monthly account statements, the question before this court is whether, as a matter of law, the statements constituted some evidence upon which it could be found that there had been an existing contractual relationship between appellant and U.S. Bank, and that this relationship was set forth in a written agreement that included the cited arbitration clause.

{¶29} A review of the relevant case law shows that, under limited circumstances, the fact that a billing statement was mailed to a person can form the basis of a finding of liability under a credit card account. In support of such a finding, courts have generally cited the doctrine of "account stated," which has been defined in the following manner:

{¶30} "'An account rendered by one person to another and not objected to by the latter within a reasonable time becomes an account stated. It becomes the duty of the one to whom the account is thus rendered to examine the same within a reasonable time and object if he or she disputes its correctness. What constitutes a reasonable time within which objection must be made to an account rendered in order to preclude a

10

presumption of assent and, thus, prevent it from becoming an account stated, depends on the particular factors of each case, such as the nature of the transaction, the relations of the parties, their distance from each other and the means of communication between them, and their business capacity and intelligence.'" *National Check Bureau v. Buerger*, 9th Dist. No. 06CA008882, 2006-Ohio-6673, ¶25, quoting *Creditrust Corp. v. Richard*, 2d Dist. No. 99-CA-94, 2000 Ohio App. LEXIS 3027, at *11-12 (July 7, 2000).

{¶31} Under the doctrine of account stated, legal responsibility to pay a debt can be established through the submission of evidence showing that an account statement was mailed to the debtor, who then failed to challenge the correctness of that statement within a reasonable time. However, although not expressly referenced in the foregoing quote, it has been held that this doctrine cannot be invoked unless the existence of the debtor-creditor relationship has been proven through other evidence. This requirement was discussed in *Nelson v. First National Bank Omaha*, Minn.App. No. A04-579, 2004 Minn. App. LEXIS 1316, a case in which the bank sought recovery on a credit card debt notwithstanding the fact that it could not produce a copy of a signed application:

{¶32} "When proof of an express contract does not exist, liability for a particular debt may be established pursuant to the doctrine of account stated. * * * This doctrine requires a manifestation of the debtor's and creditor's assent to a stated sum as an accurate computation of the amount due the creditor on the account. * * * Because assent to the numerical accuracy of the account is required, the doctrine of account stated does not apply in the absence of 'some form of assent to the account' in the first instance. * * * Merely transmitting an account to a debtor does not establish an account stated. * * * Accordingly, when the putative debtor was not aware of the account when

11

the debt was incurred, the doctrine of account stated does not supply a legal basis for liability because the requisite element of mutual assent is lacking.  * * *.

{¶33} "* * *

{¶34} "[The bank] contends that proof of an actual account is not required. Rather, [the bank] argues, it need only prove that appellant received billing statements and retained them without objection. This argument is unavailing.  It is true that acquiescence to an account balance may be established if the debtor retained without objection, for a long period of time, a statement of account rendered by the creditor. * * * But implicit in this notion of implied consent to the account balance is an existing relationship between the debtor and creditor in which assent to the account itself is undisputed." (Citations omitted.)  *Id.* at *5-9.

{¶35} In our case, the materials attached to the amended complaint and the motion to stay/compel arbitration shows that appellees were unable to produce a copy of the credit card application which appellant supposedly executed in 1991. Furthermore, appellees did not present any other evidentiary materials, such as an admission by appellant, which would tend to establish the existence of an ongoing debtor-creditor relationship between her and U.S Bank.  In other words, appellees did not demonstrate that appellant had expressly or implicitly agreed to enter into any form of contractual relationship with U.S. Bank for a credit account.

{¶36} Under these circumstances, the doctrine of account stated is inapplicable to the facts of the underlying case.  In turn, this means that the copies of the 2002-2003 monthly account statements had no evidentiary value for purposes of proving the existence of a valid written agreement between U.S. Bank and appellant which included

12

an enforceable arbitration clause.

{¶37} As previously mentioned, in rendering his decision on the "arbitration" issue, the trial court magistrate did not find that appellant had actually signed the credit card agreement which Andrew Keith submitted to U.S. Bank in 1991. Instead, the magistrate based his conclusion as to the existence of a contractual relationship between appellant and U.S. Bank upon the finding that it was possible that she had used the credit card to make purchases prior to 2002. As a general proposition, the consumer's actual use of the credit card is considered sufficient to demonstrate her acceptance of the provisions of the credit card agreement. *See FIA Card Serv., N.A. v. Ryan*, 10th Dist. No. 09AP-193, 2009-Ohio-6660, ¶21.

{¶38} In regard to the "prior use" finding, this court would indicate that our review of the trial record does not reveal any evidentiary materials supporting the magistrate's analysis. First, appellees did not present any direct evidence, such as a receipt, which would tend to prove appellant's actual use of the credit card at any time. Second, we would emphasize that it is impermissible to infer her use of the card from the presence of her name on the monthly account statements. Again, pursuant to the governing case law, such statements can only be employed to prove the present amount owed *after* the actual existence of the underlying contractual relationship has been established through the submission of other evidentiary materials. As a result, both the magistrate and the trial court erred in concluding that the monthly account statements were relevant to any factual issue pertaining to the determination of whether appellant had ever entered into a binding contractual relationship with U.S. Bank.

{¶39} Besides the monthly account statements, the magistrate referred to only

13

one other evidentiary item in support of his finding as to the existence of a valid credit card agreement. Specifically, the magistrate noted that, as part of her averments in her affidavit, she only asserted that she had not made any of the purchases described in the monthly account statements for 2002 and 2003. In light of this, the magistrate inferred that, since appellant had not made any denial regarding purchases which occurred prior to 2002, it was possible that she could have used the credit card during that time frame and, therefore, implicitly accepted the terms of the written "account" agreement.

{¶40} As to the weight to be given to appellant's affidavit, this court would note that the affidavit did not contain any express admission in relation to the existence of a valid written or the separate issue of whether appellant had "used" the credit card at any time in the past. In the absence of an express admission, appellees still had the burden of proof on these factual points in order to satisfy the federal standard for demonstrating entitlement to an "arbitration" stay under 9 U.S.C. 3. *Penalver*, 428 F.Supp. at 1072. Under these circumstances, even if it is assumed that appellant's failure to address the pre-2002 period in her affidavit supported a possible inference that she had previously used the disputed credit card to make purchases, that inference was not sufficient, in and of itself, for appellees to carry their burden.

{¶41} In their brief before this court, appellees cite two other evidentiary items which, according to them, supported the magistrate's finding relating to the existence of a valid written agreement. First, they note that, as part of her affidavit attached to their motion, the U.S. Bank recovery manager averred that the 1991 credit card application was signed by both appellant and Andrew Keith. Second, appellees submit that, as an attachment to their separate supplemental motion for sanctions, they presented certain

14

documentary evidence showing that Andrew Keith had listed appellant as a co-debtor on the credit card debt in his federal bankruptcy filings.

**{¶42}** Regarding the foregoing two items, our review of the magistrate's written decision indicates that he never referred to the items in rendering his factual findings on the "stay" issue. Additionally, we would emphasize that, as part of his discussion of the other evidentiary submissions, the magistrate accepted appellant's averment that she never signed the 1991 credit card application, and then predicated his entire decision on the finding that there was a possibility that she had used the credit card at some point before 2002. Given this analysis, the magistrate obviously held that the two evidentiary items cited by appellees were not entitled to the same weight as appellant's averment.

**{¶43}** Pursuant to the foregoing discussion, this court concludes that appellees' evidentiary materials were not sufficient to establish either of the following two points: (1) that appellant signed the credit card application prior to its submission to U.S. Bank in 1991; or (2) that she actually used the credit card at any time during the eleven-year period from 1991 to 2002. Therefore, as a matter of law, appellees failed to satisfy the first prong of the federal standard for obtaining an "arbitration" stay under 9 U.S.C. 3; i.e., they did not show the existence of a written agreement between the parties which contained a valid arbitration term. For this reason alone, appellees' motion to stay the trial proceedings and compel arbitration should have been denied, and the case should have proceeded to trial on all pending matters, including the issue of whether there was a valid written agreement between appellant and U.S. Bank.

**{¶44}** Appellant's first assignment is well taken, and is dispositive of the merits of this appeal.

15

{¶45} Under her second assignment, appellant has raised two separate issues for consideration. First, she submits that appellees waived the right to seek arbitration by failing to assert it in a timely manner. Second, she contends that, even if she was a party to the underlying credit card agreement and Dodeka's account claim was subject to arbitration, her counterclaim should not have been submitted to arbitration.

{¶46} In light of our conclusion under the first assignment that appellees' motion to stay should have been overruled as a matter of law, the merits of the foregoing two issues have become moot. Hence, this court is not required under App.R. 12(A)(1)(c) to address the substance of the second assignment. *See Kennedy v. Oliver*, 9th Dist. Nos. 06CA008873 & 06CA008874, 2006-Ohio-5814, ¶13.

{¶47} Given that appellant's first assignment of error has merit, it is the judgment and order of this court that the judgment of the trial court is reversed, and the case is hereby remanded for further proceedings consistent with this opinion.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.