[Cite as *Hicks v. Cadle Co.*, 2014-Ohio-872.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO


KERRY R. HICKS,                           :        **O P I N I O N**

      Plaintiff-Appellant,               :

      - vs -                                     :        **CASE NO. 2013-T-0017**

THE CADLE COMPANY, et al.,          :

      Defendants-Appellees,            :

THE HOME SAVINGS AND LOAN          :
COMPANY OF YOUNGSTOWN, OHIO,

      Intervening Defendant.            :


Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2011 CV 01148.

Judgment: Affirmed.


*Kris J. Kostolansky*, Lewis Roca Rothgerber, LLP, 1200 Seventeenth Street, Suite 3000, Denver, CO  80202; *Christopher S. Williams*, *Ronald M. McMillan*, and *John J. Eklund*, Calfee, Halter & Griswold, LLP, The Calfee Building, 1405 East Sixth Street, Cleveland, OH  44114 (For Plaintiff-Appellant).

*Victor O. Buente, Jr.*, Cadle Company, 100 North Center Street, Newton Falls, OH 44444-1321; *F. Dean Armstrong*, Armstrong Law Firm, 1324 Dartmouth Road, Flossmoor, IL  60422  (For Defendants-Appellees).


TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Kerry R. Hicks, appeals the February 22, 2013 judgment of the

Trumbull County Court of Common Pleas denying his motion to compel arbitration with

regard to the amended counterclaims filed by appellees, The Cadle Company ("TCC"), Daniel C. Cadle ("Cadle"), and United Joint Venture Limited Partnership ("United"). Cadle is the former president and current owner and director of TCC, a debt collection company. TCC is the only general partner and registered agent of United, which is also a debt collection company. Based on the following, we affirm the judgment of the trial court.

{¶2} The counterclaims at issue alleged that appellant violated Ohio's Pattern of Corrupt Activities Act (R.C. 2923.31, et seq.), intentionally inflicted emotional distress, and tortiously interfered with the business relations of appellees and The Home Savings and Loan Company of Youngstown, Ohio ("Home Savings").

{¶3} Litigation between the parties began in September 2003, when Buckeye Retirement Co., LLC ("Buckeye")[1] sued appellant and his business partner, Mr. Jaeckle, in federal district court in Tennessee seeking to collect the outstanding debt on a promissory note. The various claims included allegations of tortious conduct on both sides. A history of litigation between the parties is detailed in three opinions of the United States Court of Appeals for the Tenth Circuit: *Hicks v. Bank of Am. N.A.* ("*Hicks I*"), 218 Fed.Appx. 739 (10th Cir.2007); *Hicks v. Cadle Co.* ("*Hicks II*"), 355 Fed.Appx. 186 (10th Cir.2009); and *Hicks v. Cadle* ("*Hicks III*"), 436 Fed.Appx. 874 (10th Cir.2011).

{¶4} Appellant and others obtained a loan from Bank of America ("BOA") in 1999; appellant was one of the signators on the note and two renewed versions thereof. However, appellant contended he was not liable on the balance of $1,000,000.00 pursuant to an oral, collateral agreement with BOA—the amount that was outstanding

---

1. Buckeye is another debt collection company and an alter ego of TCC and Cadle. Although Buckeye was involved at the beginning of the dispute between the parties, it is not a party to this appeal.

2

when Buckeye purchased the note from BOA in 2002. The note contains a provision requiring binding arbitration of:

> Any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this instrument, agreement or document or any related instruments, agreements or documents, including any claim based on or arising from an alleged tort[.]

{¶5} The note also contained a venue provision that any litigation would take place in Tennessee. In proceedings before the Tenth Circuit, the parties agreed that Tennessee law governed.

{¶6} Shortly after Buckeye purchased the note, TCC, acting on behalf of Buckeye, attempted to collect the debt from appellant in an action filed in Tennessee. The debt collection activities of TCC and Buckeye are intertwined. TCC employees were, at times, also Buckeye employees. TCC employees, including Cadle, made collection calls and participated in collection-related correspondence in Buckeye's name. TCC computer systems and phones were also used in Buckeye's name. Three separate arbitrations in Colorado followed Buckeye's efforts to collect from appellant. Appellant was successful in all three arbitrations and eventually obtained a large award against Cadle. The amount due on the note itself, if any, was assigned back to BOA in 2003.

{¶7} This Ohio action between appellant and appellees began in May 2011 when appellant sought declaratory judgment and injunctive relief to prevent appellees from transferring assets belonging to Cadle, a principle of TCC and United. Cadle, TCC, and United were in negotiations with Home Savings to refinance an outstanding debt. Appellant was apparently concerned that funds from Cadle's IRA account would

3

be used to pay Home Savings and would therefore not be available to satisfy the arbitration award. Appellant registered his arbitration award in the United States District Court for the Northern District of Ohio and brought suit in Trumbull County seeking to enforce the award. A temporary restraining order was issued, and the matter was set for hearing on appellant's request for a preliminary injunction. Appellees then filed an answer, counterclaims, and a jury demand.

{¶8} At a June 28, 2011 hearing, appellant's request for a preliminary injunction was denied, and the temporary restraining order was dissolved. Thereafter, the arbitration award was paid, and appellant voluntarily dismissed his claims. With regard to appellees' counterclaims, appellant filed a motion to stay litigation and compel arbitration or, in the alternative, to dismiss for failure to state a claim. While the motion was pending, appellees filed amended counterclaims. Cadle alleged violations of Ohio's Pattern of Corrupt Activities Act (R.C. 2923.31, et seq.) and intentional infliction of emotional distress; furthermore, appellees together alleged tortious interference with business relationships. Appellees' amended counterclaims cover conduct alleged to have occurred between 2007 and 2011. The trial court denied appellant's motion to compel arbitration finding that appellees' counterclaims were not subject to the note's arbitration provision.

{¶9} Appellant appealed this order and asserts a single assignment of error:

{¶10} "Whether the Trial Court erred in denying Mr. Hicks' Motion to Compel by finding that the Amended Counterclaims do not 'arise out of' or 'relate to' the Note and that Defendants are not bound by the Note's broad arbitration provision."

{¶11} Under this assignment, appellant frames two issues for our determination:

4

[1] Whether Defendants' Amended Counterclaims, which seek adjudication of factual allegations relating to the Note that were decided by or occurred in arbitration, "arise out of" or "relate to" the Note.

[2] Whether Defendants are bound by the Note's broad arbitration provision where TCC is an assignee of the Note and all prior courts and arbitration tribunals have held that Mr. Cadle and his agents and alter ego entities are so bound.

{¶12} A trial court's ruling denying a motion to compel arbitration is a final, appealable order. R.C. 2711.02(C); *EMCC Inv. Ventures, LLC v. Rowe*, 2012-Ohio-4462, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶17. Generally, this court reviews a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *Id.* at ¶18. However, "this court reviews de novo a trial court's legal conclusion as to whether a party is contractually bound by an arbitration clause." *Liberty Credit Servs. Assignee of or Successor in Interest to Capital One v. Yonker*, 11th Dist. Portage No. 2012-P-0096, 2013-Ohio-3976, ¶12. When deciding motions to compel arbitration, we look to the scope of the arbitration clause to determine whether the parties actually agreed to arbitrate the issue. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 417 (2011).

{¶13} We recognize a presumption in favor of arbitration when claims between the parties to a contract fall within the scope of an arbitration clause. *Id.* Under both Ohio and Federal law, whether a party may be compelled into arbitration is a matter of contract. *Id.* at 416-417. Because the arbiter derives his power from the contractual consent of the parties, a party cannot be compelled to arbitrate a dispute that the party never agreed to submit to arbitration. *Id.* at 417.

> To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the Court must 'classify

5

the particular clause as either broad or narrow.'   An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered the paradigm of a broad clause.

(Citations omitted).  *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 188 (2006).  Even a broad arbitration clause, however, does not render all claims subject to arbitration.  *Id.* at 189.

{¶14}  The Ohio Supreme Court has held that whether a cause of action is within the scope of an arbitration agreement may be determined by applying the federal standard found in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir.2003).  *Academy of Medicine*, *supra*, 188 ("[A] state court may rely on a federal standard in applying Ohio law on the issue of arbitrability.  However, that standard must be consistent with Ohio law and must reflect a correct statement of the applicable federal jurisprudence.  The appellate court's reliance on *Fazio* is appropriate in both regards.").  *Fazio* held that "[a] proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  *Fazio* at 395.  *Fazio* further stated: "Even real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims "touch matters" covered by the [agreement].'"  *Id.*

{¶15}  In *Fazio*, the Sixth Circuit found that claims relating to the theft of investors' assets by their broker could not be maintained without reference to the account agreements, which contained the arbitration clause.  *Id.*

> [I]t is evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements—the sale and purchase of securities and the management of accounts.  The lawsuit by necessity must describe why [the defendant] was in control of the plaintiffs' money and what

6

> the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action without reference to the account agreements[.]

*Id.* The *Fazio* Test "allows courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented. It also establishes that the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable." *Academy of Medicine*, *supra*, 191.

{¶16} Furthermore, when the contractual agreement containing the arbitration provision has terminated prior to the dispute, the grievance is said to

> arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-206 (1991).

{¶17} Applying these principles, appellees' claims can be maintained without reference to the note; the conduct of which appellees complain occurred, if at all, after the note was assigned back to BOA in 2003. Appellant was formally relieved of any possibility of liability on the note in 2004, when BOA assigned the note to a third-party, acknowledging appellant's nonliability. Although Cadle controls TCC, United, and Buckeye, along with many other debt collection entities, he did not sign the note. The assignments indicate that Buckeye purchased the note from BOA and that Buckeye sold it back to BOA. Thus, at the very latest, any contractual relationship between appellant and appellees based on the note terminated in 2004. These facts are distinguishable from *Fazio*, where the conduct complained of occurred while a contractual broker-client relationship was in force. Furthermore, no action alleged

7

"infringe[s] on a right that accrued or vested under" the promissory note, nor is there a "disputed contractual right that survives" the note's expiration.

{¶18} As the trial court held, "the [amended] counterclaims all involved alleged tortious activities by [appellant] having no relationship to any particular term of the note or any right or obligation of any party under the note." Cadle made the following allegations: (1) appellant falsely accused Cadle of stalking appellant's wife and daughter; (2) appellant lured Cadle to a public meeting of company stockholders and there embarrassed him by having him detained and removed from the premises by police on the basis of an ex parte civil protection order appellant had obtained without Cadle's knowledge; (3) appellant caused to be distributed a false report indicating that Cadle had filed for bankruptcy; (4) appellant caused the distribution of a false report that Cadle was a threat to the physical safety of appellant's family and had personality traits consistent with a killer; (5) appellant filed duplicative litigation against appellees in Cadle's hometown in order to embarrass Cadle; (6) appellant fraudulently obtained a temporary restraining order, which interfered with appellees' business relations by enjoining the refinancing of a longstanding loan; (7) appellant threatened an IRS investigation of Cadle's daughter if the counterclaims were not dismissed. All of these events are alleged to have occurred after termination of the relationship between the parties liable on the note. Thus, the dispute at issue is not "related" to the note.

{¶19} On the basis of these allegations, appellees filed claims for intentional infliction of emotional distress, tortious interference with business relations, and engaging in a pattern of corrupt activity. None of these claims require reference to the note, as none seek to enforce any right or obligation or derive any benefit from the note.

8

This also contrasts with the situation in *Fazio*, where the claims involved theft and misuse of money entrusted to the broker. The relationship was based on account agreements that contained the arbitration clause. These very account agreements were allegedly breached by the broker's misconduct.

{¶20} Appellant's reliance on *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341 (2009), is also misplaced. In *Alexander*, the Ohio Supreme Court consolidated two cases involving statutory rights. *Id*. at 342. The first involved an action for failure to timely file an entry of satisfaction of a mortgage. *Id*. The second involved an action for failure to timely file a termination statement. *Id*. at 343. The underlying contracts—the mortgage and the loan agreement, each of which contained an arbitration clause—were necessary to the claims because the statutory right underlying the claims can arise only from the execution and satisfaction of such credit agreements. *Id*. at 342, 345-346. Without proving the existence and terms of the underlying agreements, neither plaintiff would have been able to demonstrate that their creditor had failed to fulfill the statutory obligation to timely file an entry of satisfaction or a termination statement. *Id*. Thus, the claims could not be maintained without reference to the underlying agreements.

{¶21} Here, appellees' counterclaims do not rely on a statutorily-created right that arises only in the presence of a valid and satisfied mortgage or loan agreement. Instead, appellees' claims sound in tort and require no proof that the agreement existed. If the alleged conduct occurred, it could be actionable even if there was never an agreement between the parties. In *Alexander*, the claims could not exist unless the agreements existed. That is not the case here.

9

**{¶22}** Appellees further assert that this case is analogous to *Dodeka, L.L.C. v. Keith*, 11th Dist. Portage No. 2011-P-0043, 2012-Ohio-6216. In that case, we found that a person who was not shown to have expressly or implicitly assented to a contractual arrangement was not subject to an arbitration provision contained within the purported contract. *Id.* at ¶35. We affirm that the claims at issue here do not fall within the scope of the arbitration provision. The argument that appellees did not assent to being bound by the note's arbitration provision is moot.

**{¶23}** Finally, appellant, in a section of his appellate brief entitled, "Standard of Review," states: "Whether the Trial Court properly denied Mr. Hicks' request for limited discovery as to the relationship between United and Mr. Cadle and TCC is reviewed for abuse of discretion. *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 fn. 24 (9th Cir.1977)." There is some further discussion near the end of appellant's brief that indicates appellant would like further discovery as to the relationship between Cadle and United. However, as appellant assigns no error in this regard, we decline to address the discovery issue. *See, e.g.,* App.R. 16.

**{¶24}** Appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.