[Cite as *Duff v. Christopher*, 2023-Ohio-349.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

PATRICIA DUFF,

       Plaintiff-Appellee,

  - v -

THOMAS CHRISTOPHER,

       Defendant-Appellant.

CASE NO. 2021-L-122

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2021 CV 000780

**O P I N I O N**

Decided: February 6, 2023
Judgment: Reversed and remanded

*David L. Harvey, III*, and *Matthew B. Abens*, Harvey, Abens, Iosue Co., LPA, 19250 Bagley Road, Suite 102, Middleburg Heights, OH 44130 (For Plaintiff-Appellee).

*Erik L. Walter*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}  Defendant-appellant, Thomas Christopher, appeals from the judgment of the Lake County Court of Common Pleas, denying his motion to dismiss the matter and compel arbitration.  For the following reasons, we reverse the decision of the lower court and remand for further proceedings consistent with this opinion.

{¶2}  On July 2, 2021, plaintiff-appellee, Patricia Duff, filed a Complaint in the Lake County Court of Common Pleas, raising claims of Assault and Intentional Infliction of Emotional Distress in relation to an alleged incident in which Christopher threatened to shoot her in the head while holding his hand up mimicking a handgun.

{¶3} On October 11, 2021, Christopher filed a Motion to Dismiss to Compel Arbitration. Therein, and in his attached affidavit, he contended that the alleged incident occurred during employment hours at a work meeting at the Thomas Christopher Group (TCG), of which Christopher is president. The statements made related to her employment and the police report indicated that Christopher said "shoot" relates to terminating someone from a project. He contended that the matter was subject to an arbitration clause contained in Duff's employment contract. The Employment Agreement, entered into between TCG and Duff, included an arbitration clause, which stated, in pertinent part:

> In consideration of the mutual promises herein, TCG and the EMPLOYEE hereby waive all rights to adjudicate any dispute with the other in a court of law * * * and in lieu thereof agree to submit any and all disputes for binding resolution by arbitration. For the purpose of this agreement, TCG shall include its successors, agents, employees, officers, directors, subsidiaries, or affiliates. * * * This Arbitration Agreement shall apply to all claims of any kind against TCG or any of its officers, directors, managers or employees, or against Employee by TCG, including but not limited to: claims for any alleged contract violation by either party; any employment claim including claims brought based on the EEOC or similar state statute related to the enforcement of employment laws; employment termination issues; any claim for sexual or other harassment, claims for any form of discrimination, including any claims that come under the Policy Against Sexual Harassment And All Other Harassment, and any other harassment policy adopted by TCG * * *.

{¶4} It further states "EMPLOYEE agrees that no officer, director, agent or employee shall have any personal liability to EMPLOYEE for any action taken by such person(s) on behalf of TCG in the scope of his or her employment duties, and such person(s) shall not be joined in action taken by EMPLOYEE against TCG to enforce or interpret this Agreement." It provided that arbitration will be conducted in Sarasota

2

Case No. 2021-L-122

County, Florida unless otherwise agreed upon by the parties in writing.

{¶5} On October 25, 2021, Duff filed a Brief in Opposition in which she argued that the arbitration clause did not apply because TCG, not Thomas Christopher individually, was party to the employment agreement with Duff and the actions taken by Christopher did not fall under that agreement.

{¶6} In a November 4, 2021 Judgment Entry, the trial court denied Christopher's Motion. It found that the claims raised by Duff, threats of physical violence, did not fall within the scope of Christopher's employment duties, were not in any of the categories of employment-related activities contained in the arbitration clause, and were not subject to the arbitration agreement.

{¶7} Christopher timely appeals and raises the following assignment of error:

{¶8} "The Trial Court's decision to deny Defendant-Appellant's Motion to Dismiss to Compel Arbitration was in error because the parties had a valid agreement to arbitrate and Plaintiff-Appellee's claims are in the scope of the arbitration agreement."

{¶9} "The scope of an arbitration clause, that is whether a controversy is arbitrable under the provisions of a contract, is a question for the court to decide upon examination of the contract." (Citations omitted.) *TN3 LLC v. Jones*, 2019-Ohio-2503, 139 N.E.3d 473, ¶ 14 (11th Dist.). "Therefore, this court reviews de novo a trial court's legal conclusion as to whether a party is contractually bound by an arbitration clause." (Citation omitted.) *Knight v. Altercare Post-Acute Rehab. Ctr., Inc.*, 2017-Ohio-6946, 94 N.E.3d 957, ¶ 9 (11th Dist.). While "[t]he standard of appellate review in determining the enforceability of an arbitration provision is de novo" the trial court's factual findings "must be accorded deference." *TN3* at ¶ 14, citing *Jamison v. LDA Builders, Inc.*,

3

11th Dist. Portage No. 2011-P-0072, 2013-Ohio-2037, ¶ 21.

{¶10} "Ohio public policy favors arbitration and, therefore, such provisions are ordinarily considered valid and enforceable." *Alkenbrack v. Green Tree Servicing, L.L.C.*, 11th Dist. Geauga No. 2009-G-2889, 2009-Ohio-6512, ¶ 14. "[A]n arbitration provision must be enforced unless it is not susceptible of an interpretation that covers the asserted dispute, with any doubt being resolved in favor of arbitration." *Id.*, citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14.

{¶11} As an initial matter, Duff argues that since Christopher individually was not a party to the employment contract containing the arbitration clause, he cannot seek to enforce such a clause, citing *Corporate Floors, Inc. v. Lawrence Harris Const.*, 8th Dist. Cuyahoga No. 88464, 2007-Ohio-2631.

{¶12} In *Corporate Floors*, the court emphasized that generally "a party to an action cannot be required to arbitrate a dispute between itself and a second party unless those parties have previously agreed in writing to arbitration" and "[w]hen a complaint has been brought against both parties and nonparties to an arbitration agreement, arbitration can only be ordered as to the parties who agreed to the arbitration provision." (Citation omitted.) *Id.* at ¶ 6. The court concluded that since the defendant had signed the contract in a corporate capacity, he was not personally a party to the contract and thus, the arbitration clause did not apply to him. *Id.* at ¶ 8. Other courts have reached similar conclusions. *See Cahill v. New Richmond Natl. Bank*, 12th Dist. Clermont No. CA2001-12-093, 2002-Ohio-3881, ¶ 7 (plaintiffs cannot be forced to submit their claims to arbitration against a defendant personally where that defendant signed the contract in his

4

corporate capacity only); *Kline v. Oak Ridge Builders, Inc.*, 102 Ohio App.3d 63, 67, 656 N.E.2d 992 (9th Dist.1995). This court has also held that, generally, "[a]n arbitration clause is only binding upon the specific parties to the agreement." *Glenmoore Builders, Inc. v. Kennedy*, 11th Dist. Portage No. 2001-P-0007, 2001 WL 1561742, *5 (Dec. 7, 2001); *Owens Flooring Co. v. Hummel Constr. Co.*, 140 Ohio App.3d 825, 830, 749 N.E.2d 782 (11th Dist.2001).

{¶13} While it is accurate here that Christopher signed the contract in his capacity as president of TCG, the analysis on this issue does not end here. As this court has recognized, "under certain circumstances, non-signing third parties may enforce arbitration agreements." *Knight*, 2017-Ohio-6946, at ¶ 21. "Ohio courts have recognized that a nonsignatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal when ordinary principles of contract and agency law require." *Rivera v. Rent A Center, Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765, ¶ 20.

{¶14} In *Rivera*, the appellate court addressed a case involving similar facts as those present here. Rivera executed an agreement relating to his employment with Rent A Center, which included a provision agreeing to arbitrate claims against Rent A Center relating to his employment as well as such related claims that he "may have against any * * * officers, directors, employees, or agents in their capacity as such or otherwise." (Emphasis omitted.) *Id.* at ¶ 16. The plaintiff filed a complaint against Rent A Center and Owens, plaintiff's supervisor. Owens sought arbitration of the matter, although he was not a party to the contract containing the arbitration agreement. *Id.* at ¶ 2-3. The court concluded that since the arbitration clause covered employees in their individual capacity and was agreed to by the plaintiff, "the Agreement is enforceable as between Rivera and

5

Owens, even though Owens is a nonsignatory or nonparty." *Id.* at ¶ 24. *See also Terry v. Bishop Homes of Copley, Inc.*, 9th Dist. Summit No. 21244, 2003-Ohio-1468*,* ¶ 29 ("[an employee], whose actions as an agent and employee * * * served as a basis for his potential liability, is entitled to enforce the arbitration agreement") (citation omitted); *Owens Flooring* at 830 (distinguishing between enforcement of an arbitration clause by a non-party against a signatory and a nonsignatory).

{¶15} Similar facts to *Rivera* are present in this case. Although Christopher individually was not a party to the employment agreement, which was executed by Duff, the arbitration clause stated that it applied "to all claims of any kind against TCG or any of its officers, directors, managers or employees." Thus, the agreement can be enforced between Duff and Christopher although he was a nonsignatory. That is, because Christopher is an agent, i.e., officer, covered by the agreement, and the allegations arise out of Christopher's employment and agency relationship with TCG, the arbitration agreement can be invoked between the parties even though Christopher is a nonsignatory. Given the foregoing, we will proceed to consideration of whether the arbitration clause is otherwise enforceable.

{¶16} "[T]wo basic facts must be proven before a stay of the trial proceeding can be justified: (1) the existence of a valid written agreement to arbitrate disputes between the parties; and (2) the scope of the agreement is sufficiently broad to cover the specific issue which is the subject of the pending case." *Scharf v. Manor Care of Willoughby, OH, LLC*, 11th Dist. Lake No. 2019-L-062, 2020-Ohio-1322, ¶ 22, citing *Dodeka, L.L.C. v. Keith*, 11th Dist. Portage No. 2011-P-0043, 2012-Ohio-6216, ¶ 25. "Both factual requirements are predicated upon the legal proposition that, while the arbitration of

6

disputes is strongly encouraged under the law, a party should not be forced to proceed to arbitration unless she expressly agreed to do so." (Citation omitted.) *Id.*

{¶17} "To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the Court must 'classify the particular clause as either broad or narrow." (Citation omitted.) *Academy of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 18. "[A]n arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered the paradigm of a broad [arbitration] clause." (Citation omitted.) *Hicks v. Cadle Co.*, 11th Dist. Trumbull No. 2013-T-0017, 2014-Ohio-872, ¶ 13, citing *Academy of Medicine* at ¶ 18.

{¶18} In the present matter, the arbitration clause is broad, as it states that the parties agreed to submit "any and all disputes for binding resolution by arbitration." However, "[e]ven a broad arbitration clause * * * does not render all claims subject to arbitration." *Hicks* at ¶ 13; *see Kennedy v. Stadtlander*, 8th Dist. Cuyahoga No. 110416, 2021-Ohio-4167, ¶ 24, citing *McCourt Constr. Co. v. J.T.O., Inc.*, 11th Dist. Portage No. 96-P-0036, 1996 WL 586422, *2 (Sep. 20, 1996) (only the claims that arise from the contract which contains the clause can be submitted to arbitration). "The Ohio Supreme Court has held that whether a cause of action is within the scope of an arbitration agreement may be determined by applying the federal standard found in *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386 (6th Cir.2003)." *Hicks* at ¶ 14 and 4 (applying the *Fazio* standard in the case of an arbitration agreement including a clause that "[a]ny controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this instrument"); *Academy of Medicine* at ¶ 15.

7

{¶19} *Fazio* provides that, to determine "whether an issue is within the scope of an arbitration agreement * * * [a] proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id.* at 395. "Torts may often fall into this category," but "[e]ven real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims 'touch matters' covered by the [agreement].'" (Citation omitted.) *Id.* The Ohio Supreme Court has emphasized that "[t]he *Fazio* test * * * functions as a tool to determine a key question of arbitrability—whether the parties agreed to arbitrate the question at issue. It prevents the absurdity of an arbitration clause barring a party to the agreement from litigating *any* matter against the other party, regardless of how unrelated to the subject of the agreement." *Academy of Medicine* at ¶ 29.

{¶20} While Christopher primarily relies upon his argument that the arbitration clause states that it applies to "any claims," this fails to recognize the clear indication by the Ohio Supreme Court that allowing an arbitration clause to prevent all claims whatsoever, no matter how unrelated to the contract's subject matter, is an "absurdity." *Academy of Medicine* at ¶ 29. Even broad arbitration clauses do not automatically prevent every claim from being arbitrated. *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 35 (8th Dist.), citing *Aiken v. World Fin. Corp.,* 373 S.C. 144, 151, 644 S.E.2d 705 (2007) ("[b]ecause even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings"). To hold otherwise would allow a party to commit any criminal act or civil wrong at a place of employment or

8

during a work meeting, no matter how serious or unrelated to employment, and still seek enforcement of the arbitration clause, which is precisely what the Ohio Supreme Court sought to avoid when emphasizing the absurdity of an arbitration clause barring litigation of *any* matter against the other party. *Academy of Medicine* at ¶ 29. For example, it has been held that torts such as sexual assault are not foreseeable and fall outside of an employment agreement and its arbitration provision. *Arnold* at ¶ 65-67; *Crider v. GMRI, Inc.*, 2020-Ohio-3668, 154 N.E.3d 1250, ¶ 18 (8th Dist.) ("verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts against Crider based on the unlawful conduct is not a foreseeable result of the employment").

{¶21} The problem in the present matter, however, is that there exists a factual dispute as to the exact circumstances of the incident that occurred between Christopher and Duff. Duff asserted claims that Christopher made a shooting motion with his hand and threatened to shoot her in the head, alleging Assault and Intentional Infliction of Emotional Distress. Christopher contended, through his Motion to Dismiss to Compel Arbitration, that his actions were not a threat but that the term "shoot" is used in HR to refer to firing someone, his actions took place during a meeting relating to Duff's work performance, and they pertained to her employment with the company. Under these differing versions of the events, Christopher's actions may be either a tort committed outside of the scope of the agreement or an action related, at least in part, to employment and which would arguably fall under the arbitration clause. In the absence of a hearing by the trial court below, the record is not sufficiently developed for this court to make a determination on this issue.

9

Case No. 2021-L-122

{¶22} "A party seeking to enforce an arbitration provision may choose to move for a stay of proceedings under R.C. 2711.02, or to petition for an order to compel the parties to proceed to arbitration under R.C. 2711.03, or to seek orders under both statutes." (Emphasis omitted.) *Benson v. Spitzer Mgt., Inc.*, 8th Dist. Cuyahoga No. 83558, 2004-Ohio-4751, ¶ 19. It has been observed that "[a]rbitration does not normally require dismissal of the claims referable to arbitration; it warrants only a stay of those claims pending arbitration." *Morgan Stanley Dean Witter Commercial Fin. Servs., Inc. v. Sutula*, 126 Ohio St.3d 19, 2010-Ohio-2468, 929 N.E.2d 1060, ¶ 3. While Christopher characterized his filing before the trial court seeking arbitration as a motion to dismiss and included citations to Civ.R. 12(B)(6), it is properly treated as a motion to stay or to compel arbitration under R.C. 2711.02 or .03. In either case, the trial court is permitted to hold a hearing to obtain further evidence necessary to determine the applicability of the arbitration provision. In the case of a request to compel arbitration under R.C. 2711.03, a hearing is required, since the statute directs that the court "shall hear the parties," but only if a party has requested such a hearing, which was not the case here. *Liese v. Kent State Univ.*, 11th Dist. Portage No. 2003-P-0033, 2004-Ohio-5322, ¶ 43. Nonetheless, even where a hearing is not required, such as when filing a request to stay pending arbitration under R.C. 2711.02, the Ohio Supreme Court has held that "it is within a trial court's discretion to hold a hearing" when considering a request that a matter be submitted to arbitration. *Maestle v. Best Buy Co.*, 100 Ohio St. 3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 19.

{¶23} Courts have found that where there was not sufficient evidence present in the record to make a determination as to whether arbitration should be ordered, a remand

10

to the trial court to hold an evidentiary hearing is necessary. *See Sultaana v. Drummond Fin. Servs., L.L.C.*, 8th Dist. Cuyahoga No. 100424, 2014-Ohio-938, ¶ 10 ("[w]here disputed evidence existed in the record, appellate courts have reversed decisions staying or not staying cases pending arbitration when the trial court has failed to hold a hearing"). In *May v. Wachovia Secs., L.L.C.*, 9th Dist. Summit No. 24635, 2009-Ohio-4339, there was a question as to whether the arbitration provision in an account application for investments made through a securities company governed claims stemming from allegedly faulty investment advice. The appellate court observed that "it is unclear from the limited information in the record whether the arbitration provision in the Account Application, in fact, governs this suit," noting that the limited record did not "outline the exact nature of the misrepresentations [appellee] alleges or the scope of his relationship with [appellant]." *Id.* at ¶ 10. It concluded that it was possible the suit fell within the scope of the broad arbitration provision but that, "[u]nder the circumstances in this case, the trial court should have held a hearing on" the motion to stay proceedings pending arbitration since it "could only determine whether the dispute arguably falls within the scope of the * * * arbitration provision through [such] hearing." *Id.* at ¶ 11.

{¶24} Similarly, in *Ault v. Parkview Homes, Inc.*, 9th Dist. Summit No. 24375, 2009-Ohio-586, the court found that, where the parties disputed certain facts relative to arbitration, the court abused its discretion by failing to conduct an evidentiary hearing on the motion to stay pending arbitration. *Id.* at ¶ 13. *See also Taylor v. Squires Constr. Co.*, 196 Ohio App.3d 581, 2011-Ohio-5826, 964 N.E.2d 500, ¶ 31 (8th Dist.) (factual disputes that may support a determination that the arbitration clause applies should be resolved at a hearing on a motion to compel and to stay proceedings pending arbitration).

11

Case No. 2021-L-122

{¶25} There are conflicting versions of the events that occurred giving rise to the allegations of Assault and Intentional Infliction of Emotional Distress. In order for the court to determine whether the causes of action arose out of or related to the employment agreement or whether it would be an "absurdity" to proceed to arbitration on such claims, it is necessary to review the facts giving rise to the claims. In this instance, we determine that it was necessary for the trial court to hold a hearing to take evidence on this issue. For this reason, we reverse the decision of the lower court and remand with the order to hold an evidentiary hearing before ruling anew on whether the arbitration clause must be enforced.

{¶26} The sole assignment of error is with merit.

{¶27} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, denying Christopher's Motion to Dismiss to Compel Arbitration, is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion,
MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

{¶28} I agree with the reasoning and conclusion of the lead opinion, but write separately to briefly respond to the Dissenting Opinion's position.

12

Case No. 2021-L-122

{¶29} The dissent initially claims that the majority "needlessly chooses to apply agency principles in this case, resulting in a conflation of issues." The determination of how a non-signatory of the underlying agreement, here, Christopher, may seek to enforce the arbitration clause is a threshold issue in this case. Agency theory is one legal basis that can be used to bind a non-signatory of an agreement to that agreement. Because Christopher is an agent of TCG and the matter at issue arose out of the parties' employment, the arbitration clause may be invoked *if* the factual allegations are covered under the terms of the clause. We cannot simply assume that Christopher, as a non-signatory, can invoke the arbitration clause without a legal nexus. Here, agency theory is a necessary condition for Christopher to utilize the arbitration clause. Thus, I fail to see how the dissent asserts that the lead opinion and this opinion "needlessly chooses" to apply or discuss agency principles.

{¶30} Moreover, it is unclear what issues are being conflated. In order to determine whether Duff is asserting an independent tort not covered by the arbitration clause or whether the matter is within the scope of the clause, we first must determine the discrete issue of whether Christopher can invoke the clause. This analysis does not merge or conflate anything. To the contrary, it is simply a gateway issue that requires attention in order for the analysis to go forward. And, thus, the agency analysis is necessary to the conclusion that a hearing is required.

{¶31} The dissent also maintains that Duff's "claims can be maintained without reference to the agreement and do not touch matters covered by it." This conclusion assumes what needs to be established; namely, whether the alleged threat was indeed a "threat" thereby encompassed under the rubric of an intentional tort *or* merely corporate

13

parlance implying Duff may be fired, which would relate to a matter within the arbitration clause.

{¶32} Initially, the dissent observes that "there is no dispute that Mr. Christopher's conduct may have related to an employment matter." To the extent this is true, a hearing *is* necessary to determine whether the conduct is within the arbitration clause.

{¶33} Further, the dissent alleges the lead opinion "assumes what needs to be established" by assuming Christopher was acting within the scope of his employment. This is simply false. The lead opinion and this opinion merely underscore that the current record *does not* resolve whether the conduct at issue is within the scope of the arbitration clause or whether it is intentionally tortious and therefore outside the scope of the clause. Because of this, an evidentiary hearing is necessary.

{¶34} Christopher filed a motion to compel arbitration based upon the arbitration clause within the employment agreement. The dissent observes, as does the lead opinion, that the proper test is whether the action could be maintained without reference to the arbitration clause at issue or, alternatively, whether the claims touch on matters covered by the arbitration agreement. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Circ.2003). The dissent, in conclusory fashion, proclaims that assault and intentional infliction of emotional distress are obviously outside the arbitration clause. It is almost tautological that intentional torts are outside the scope of an employment agreement's arbitration provisions. Still, it remains to be seen whether the alleged conduct relates to employment matters covered by the arbitration clause or bona fide intentional torts outside of the arbitration clause.

14

**{¶35}** "[W]hen deciding motions to compel arbitration the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes." (Citations omitted.) *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20. Appellant moved the court to dismiss appellee's complaint and compel arbitration. R.C. 2711.03, by its very terms, governs where a party has filed a motion to compel arbitration. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶ 14. R.C. 2711.03 allows a party that claims to be aggrieved by another party's alleged failure to comply with an arbitration agreement to petition a court of common pleas "for an order directing that the arbitration proceed" and states that the court "*shall hear the parties*[.]" (Emphasis added) R.C. 2711.03(A). When, as here, a factual issue exists that is determinative of the arbitrability of a claim, an evidentiary hearing is necessary.

**{¶36}** Further underscoring the need for an evidentiary hearing, "[a] party cannot avoid contractual arbitration simply by casting the claim as a tort." (Citations omitted.) *Sumber Co. Pte. Ltd. v. Diversey Corp.*, 1st Dist. Hamilton No. C-950360, 1996 WL 365885, *4 (Feb. 28, 1996); *see also Combined Energies v. CCI, Inc.*, 514 F.3d 168, 172 (1st Cir.2008) ("it is true that CE cannot avoid arbitration by dint of artful pleading alone") *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 (1st Cir.1975) (finding that arbitration clause covered "contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir.1999) (noting that arbitrability of particular claim does not turn "on the label—'tort' or 'contract'—a party chose to affix to the claim").

15

**{¶37}** The dissent seems to maintain that Duff can avoid arbitration by simply "casting" her claims in terms of tortious conduct. This ignores, however, the crucial inquiry, to wit: is the manner in which Duff "labeled" her complaint, in light of the disputed denotation of the term "shoot," dispositive of whether she is actually asserting a matter outside the arbitration clause. I maintain, along with the lead opinion, that it is not. And one cannot escape contractual obligations by selectively pleading. The trial court must conduct a hearing to resolve this point.

_____

MARY JANE TRAPP, J., dissents with a Dissenting Opinion.

**{¶38}** I must respectfully dissent because the majority needlessly chooses to apply agency principles in this case, resulting in a conflation of issues.

**{¶39}** The majority's reference to agency principles originates from cases in which federal courts have outlined "limited exceptions to the rule that a person cannot be compelled to arbitrate a dispute that he did not agree in writing to submit to arbitration." *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 12. This analysis typically encompasses the scope of the relevant arbitration clause. *See, e.g., id.* at ¶ 15-35.

**{¶40}** However, in *Rivera v. Rent A Center, Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765, on which the majority relies, there was no serious dispute that the employee's race discrimination claim fell within the scope of the arbitration clause; he agreed to arbitrate all claims and controversies relating to his employment and

16

termination, including claims for race discrimination. *See id.* at ¶ 14 ("In this case, there is no dispute over whether an Agreement exists * * * [and] what types of claims are covered by the Agreement"). The dispositive issue was whether the employee's supervisor, who was the named defendant but not a signatory, could enforce the arbitration clause. *See id.* at ¶ 15 ("[T]he dispute arises as to who is subject to the Agreement").

{¶41} Here, there can be no serious dispute that Mr. Christopher has a legal right to enforce the arbitration clause in applicable circumstances. The employment agreement states that it applies to "all claims of any kind against TCG or *any of its officers, directors, managers or employees* * * *." (Emphasis added.) Rather, the dispositive issue presented in this case is whether Ms. Duff's intentional tort claims for assault and intentional infliction of emotional distress fall within the scope of the employment agreement's arbitration clause. The trial court correctly found that the claims raised by Ms. Duff, i.e., threats of physical violence, did not fall within the scope of her employment duties, did not fall within any of the categories of employment related activities contained in the arbitration clause, and, thus, were not subject to the arbitration agreement.

{¶42} There is no dispute that Mr. Christopher's conduct may have related to an employment matter. However, Ms. Duff is not asking for an adverse employment action to be invalidated; she is seeking damages for tortious conduct. And despite the concurring opinion's protestation, it is the lead opinion that "assumes what needs to be established" when it assumes Mr. Christopher was acting within the scope of his employment and, therefore, may enforce the arbitration agreement.

17

{¶43} The majority appropriately begins its analysis of whether Ms. Duff's claims for relief fall within the scope of the arbitration agreement with the seminal case of *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, which incorporated the *Fazio* test from federal case law, i.e., "whether the action could be maintained without reference to the contract or relationship at issue." *Id.* at ¶ 6. Stated another way, do the allegations underlying the claims touch matters covered by the arbitration agreement? *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003).

{¶44} But the majority then determines that since "there are conflicting versions of the events," majority opinion at ¶ 25, there must be a mini trial to take evidence on the meaning of the alleged threats before the trial court may determine arbitrability. This is contrary to one of the key reasons why many employers insist on arbitration agreements—arbitration is private, and confidential information or embarrassing testimony is shielded from public view. This determination is also contrary to this court's precedent. We have long recognized that "'[t]he scope of an arbitration clause, that is whether a controversy is arbitrable under the provisions of a contract, *is a question for the court to decide upon examination of the contract.*'" (Emphasis added.) *Owens Flooring Co. v. Hummel Constr. Co.*, 140 Ohio App.3d 825, 829, 749 N.E.2d 782 (11th Dist.2001), quoting *Divine Constr. Co. v. Ohio-Am. Water Co.*, 75 Ohio App.3d 311, 316, 599 N.E.2d 388 (10th Dist.1991); *see also TN3 LLC v. Jones*, 2019-Ohio-2503, 139 N.E.3d 473, ¶ 14 (11th Dist.).

{¶45} The cases that the majority cites in support of its determination that an evidentiary hearing is necessary are distinguishable, as none involved the *scope* of the

18

arbitration clause. The Eighth District's decision in *Sultaana v. Drummond Fin. Servs., L.L.C.*, 8th Dist. Cuyahoga No. 100424, 2014-Ohio-938, concerned an issue of fact as to whether the plaintiff opted out of the arbitration clause. *See id.* at ¶ 10. The Ninth District's decision in *May v. Wachovia Secs., L.L.C.*, 9th Dist. Summit No. 24635, 2009-Ohio-4339, focused on an issue of fact as to whether a particular document containing an arbitration clause in fact governed the plaintiff's claims against his investment advisor. *See id.* at ¶ 9. In *Ault v. Parkview Homes, Inc.*, 9th Dist. Summit No. 24375, 2009-Ohio-586, the Ninth District determined there was an issue of fact as to whether the arbitration clause "had failed of its essential purpose" because of delay in holding the arbitration. *Id.* at ¶ 10. Finally, in *Taylor v. Squires Constr. Co.*, 196 Ohio App.3d 581, 2011-Ohio-5826, 964 N.E.2d 500 (8th Dist.), the Eighth District determined there was insufficient evidence as to whether an estoppel theory applied to bind a nonsignatory to an arbitration clause. *Id.* at ¶ 31.

{¶46} In this case, there is no need for an evidentiary hearing to determine whether assault and intentional infliction of emotional distress touch matters covered by this arbitration agreement. Even assuming Mr. Christopher's comments to Ms. Duff occurred during a work meeting and in relation to her work performance, Ms. Duff's claims do not fall within the scope of the arbitration clause.

{¶47} While Mr. Christopher emphasizes that the arbitration clause expressly applies to "any claims," he ignores the Supreme Court of Ohio's observation that "[t]he *Fazio* test * * * functions as a tool to determine a key question of arbitrability—whether the parties agreed to arbitrate the question at issue. It prevents the absurdity of an arbitration clause barring a party to the agreement from litigating *any* matter against the

19

other party, regardless of how unrelated to the subject of the agreement." (Emphasis sic.) *Academy of Medicine* at ¶ 29. The court emphasized the holding in *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir.1995), where, although the arbitration clause provided for arbitration of all antitrust claims, this did not mean that antitrust claims arising outside of the agreement could also be arbitrated. Thus, in *Academy of Medicine*, the court noted that "'[f]or example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.'" *Id.* at ¶ 23, quoting *Coors* at 1516.

{¶48} Similarly, in *Hicks v. Cadle Co.*, 11th Dist. Trumbull No. 2013-T-0017, 2014-Ohio-872, we determined the arbitration clause did not apply to claims for intentional infliction of emotional distress, tortious interference with business relations, and engaging in a pattern of corrupt activity. We explained that "[n]one of these claims require reference to the note, as none seek to enforce any right or obligation or derive any benefit from the note." *Id.* at ¶ 19.

{¶49} Here, Ms. Duff's claims can be maintained without reference to the agreement and do not touch matters covered by it. Ms. Duff has not alleged claims involving a breach of the agreement, wrongful termination, sexual or other harassment, discrimination, violations of state or federal employment statutes, or any other type of employment claim; she alleges that Mr. Christopher engaged in a very specific type of

20

tortious conduct—an alleged incident in which Mr. Christopher threatened to shoot her in the head while holding his hand up mimicking a handgun.

{¶50} Mr. Christopher's argument—that his alleged conduct occurred during a meeting that related to Ms. Duff's work performance—cannot be utilized to eliminate any tortious act from being litigated outside of the arbitration clause. Otherwise, a party could commit any criminal act or civil wrong at a place of employment or during a work meeting, no matter how serious or unrelated to employment, and still seek enforcement of the arbitration clause, which is precisely what the Supreme Court of Ohio sought to avoid when emphasizing the absurdity of an arbitration clause barring litigation of any matter against the other party. *See Academy of Medicine* at ¶ 29. Any person to whom Mr. Christopher had made the alleged threats could have maintained the same claims as Ms. Duff, regardless of whether they had an employment contract.

{¶51} If it turns out that Mr. Christopher used the word "shoot" in relation to termination from a work project, that speaks to the merits of Ms. Duff's tort claims, i.e., it may be less likely that she can establish Mr. Christopher's conduct was tortious. However, the merits of her claims are not relevant in determining arbitrability. *See Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666, 687 N.E.2d 1352 (1998), quoting *AT & T Technologies, Inc.*, *v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("'[I]n deciding whether the parties have agreed to submit a particular [claim] to arbitration, a court is not to rule on the potential merits of the underlying claims'").

{¶52} Mr. Christopher also contends that the arbitration clause expressly references claims of "harassment" and that the police report filed by Ms. Duff alleged

21

"harassing communication"; therefore, this claim falls directly under the agreement. The employment contract states that the arbitration agreement shall apply to all claims of any kind "including but not limited to: claims for any alleged contract violation by either party; any employment claim including claims brought based on the EEOC or similar state statute related to the enforcement of employment laws; employment termination issues; any claim for sexual or other harassment, claims for any form of discrimination, including any claims that come under the Policy Against Sexual Harassment And All Other Harassment, and any other harassment policy adopted by TCG * * *." These listed items generally involve employment-related issues. The emphasis on sexual harassment in particular is of little value given that such a claim is generally maintained specifically where there is an employment relationship. *See* R.C. 4112.02. While the agreement does mention "other harassment," the claims pleaded here relate to assault and infliction of emotional distress caused through an alleged act of a threat to shoot Ms. Duff, which is beyond an act of "harassment." Critically, as noted above, we must consider whether the claims raised may be maintained outside of the agreement, which is the case here.

{¶53} Mr. Christopher also cites this court's decision in *TN3*, *supra*, in support of the proposition that the employment contract was intertwined with the alleged acts, and, thus, the arbitration clause must be enforced. In *TN3*, this court held that the various claims, including fraud and conversion, could "not be maintained without reference to the parties' contracts and are subject to arbitration." *Id.* at ¶ 18. In that case, unlike Ms. Duff's case, the claims related to allegations of a scheme to deceive TN3 rather than offer consulting services and to cause its interest in a company to be transferred through a securities agreement. We observed that each of the claims were related to the business

22

relationship between the parties and the claims were "derived from the contracts." *Id.* We have similarly found arbitration clauses are enforceable in instances where the claims involved terms of matters related directly to the contract. *See Alkenbrack v. Green Tree Servicing, L.L.C.,* 11th Dist. Geauga No. 2009-G-2889, 2009-Ohio-6512, ¶ 22 (claims of misrepresentations made in monthly statements and conversion of payments were related to the enforcement of a security interest under the contract and, thus, were "intertwined with the contract"). Mr. Christopher fails to identify any portion of the employment contract with which claims of assault and intentional infliction of emotional distress are intertwined or must be referenced to resolve the dispute; merely being employed with the company again does not mean anything occurring at a place of employment is arbitrable.

{¶54} I also find the Eighth District's decision in *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69 (8th Dist.), to be instructive in this matter. In *Arnold*, the court held that although there was an employment contract provision requiring arbitration of "any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to [Arnold's] employment," as well as "claims or controversies relating to events outside the scope of [her] employment," this provision was not enforceable. *Id.* at ¶ 4. In determining that sexual assault, occurring during work hours and work duties, falls outside of the scope of an employment agreement and an employee would not foresee that such a claim would be subject to arbitration, the court emphasized authority that outrageous torts can fall outside of the scope of broad arbitration agreements: "'Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to

23

outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.'" *Id.* at ¶ 35, quoting *Aiken v. World Fin. Corp.*, 373 S.C. 144, 151-152, 644 S.E.2d 705 (2007); *see also Chun Choe v. T-Mobile USA, Inc.*, C.D. Cal. No. SA CV18-0648-DOC, 2018 WL 6131574, *6 (Aug. 1, 2018) (applying *Aiken* and finding fraud and larceny to be outrageous torts falling outside of the scope of the parties' agreement).

{¶55} Similarly, in this case, I would find that the alleged torts are outside of the scope of the agreement and that it was not foreseeable that Ms. Duff would have to arbitrate in the State of Florida if she were assaulted during work in Ohio. *See Crider v. GMRI, Inc.*, 2020-Ohio-3668, 154 N.E.3d 1250, ¶ 18 (8th Dist.) ("verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts against Crider based on the unlawful conduct is not a foreseeable result of the employment"). Although the employment agreement addresses arbitration of "all claims," the examples provided include matters that are generally employment and employment law related. This is distinguishable from matters where particular torts have been specifically included in the agreement, as it would be clearer to the plaintiff the consequences of entering into the arbitration clause. *See*, *e.g.*, *McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 53, 749 N.E.2d 825 (12th Dist.2001) (assault found to be within the scope of the agreement where such claim was listed in the arbitration clause).

{¶56} Finally, Mr. Christopher argues that the party opposing arbitration needs to point to "explicit language" showing that the dispute is not subject to arbitration, citing *Niles Edn. Assn. v. Niles City School Dist. Bd. of Edn.*, 11th Dist. Trumbull No. 2019-T-

24

Case No. 2021-L-122

0081, 2020-Ohio-6804, ¶ 56. As applied in *Niles*, however, the requirement to point to explicit language comes into play in order to "overcome the presumption of arbitrability." *Id.* According to the *Niles* analysis, the court first determines whether the grievance at issue is within the scope of the arbitration provision and, then, if it is, applies the presumption in favor of arbitrability. *Id.* at ¶ 57-58. Since I would determine Ms. Duff's claims for relief were not within the scope of the arbitration provision, she was not required to point to explicit language showing the dispute is not subject to arbitration.

{¶57} For these reasons and upon the authorities cited, I respectfully dissent.

Case No. 2021-L-122